**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALPHA OUSMANE DIALLO,**<br><br>Petitioner,<br><br>*v.*<br><br>**JL JAMISON**, *in his official capacity as Warden, Federal Detention Center, Philadelphia*, et al.,<br><br>Respondents. | **CIVIL ACTION**<br><br>**NO. 26-4895-KSM** |

# MEMORANDUM

**MARSTON, J.** **AUGUST 28, 2026**

The Executive Branch of the U.S. Federal Government has significant, and near plenary, authority with respect to the immigration laws of this Country. But that authority only exists when the Executive Branch faithfully follows the laws that Congress has passed, its own agency opinions and procedures, and the U.S. Constitution. Because the Federal Government has failed to do so here, and, as a result, has improperly detained Petitioner Alpha Ousmane Diallo for more than six weeks, the Court will grant his Petition for a Writ of Habeas Corpus (Doc. No. 1).

## I. FACTUAL BACKGROUND

Diallo is a citizen and native of Guinea who first arrived in the United States in May of 2003. (Doc. No. 1 ¶ 8.) On February 20, 2004, Diallo was issued a Notice to Appear ("NTA") in Immigration Court. (Doc. No. 8-3.) The NTA charged him with being inadmissible under Section 237(a)(1)(A) of the Immigration and Nationality Act ("INA"). (*Id.*) Diallo then appeared before an Immigration Judge on March 31, 2005, at which time he sought both asylum and withholding of removal to Guinea. (Doc. No. 1 at 16.) The Immigration Judge denied

Diallo's request for asylum, granted his request for withholding of removal to Guinea, but failed to issue a final order of removal for Diallo. (*Id.*; Doc. No. 14 at 1–2.)

For the next 21 years, Diallo established community in the U.S. and has no criminal record[1]. (Doc. No. 1 ¶¶ 17-21.) He is the father of four U.S. citizen children, and lives with their mother, a lawful permanent resident, in Philadelphia. (*Id.* ¶¶ 8, 19–20.) And he has a valid employment authorization to work in the U.S. (*Id.* at 17–18.) But, on July 13, 2026, shortly after dropping his children off at school, he was taken into custody by agents of the U.S. Immigration and Customs Enforcement ("ICE") and charged with being unlawfully present in the United States. (*Id.* ¶ 24.) He was then brought to, and still currently remains at, the Federal Detention Center, Philadelphia ("FDC") in the custody of the U.S. Department of Homeland Security ("DHS"). (*Id.* ¶ 1.)

## II. PROCEDURAL HISTORY

The day after Diallo was detained, he filed the instant petition arguing that his detention is unlawful under the Due Process Clause of the Fifth Amendment, violates the Administrative Procedure Act ("APA"), and constitutes an unlawful ultra vires action. (Doc. No. 1.) Shortly after the Petition was filed, this Court issued an order enjoining the Government from moving Diallo out of this District. (*See* Doc. No. 2.) After the Court ordered the parties to meet and confer on the Petition (Doc. No. 3), the parties proposed—and the Court accepted—an initial briefing schedule on the Petition. On July 24, 2026, Respondents (collectively, "the

---

[1] The Government disputes this fact, but it is immaterial to the Court's analysis as the Government has made no showing any alleged criminal history is a basis for Diallo's detention. (*See* Doc. No. 8-4 at 2–3.); *cf. Lopez Cruz v. Jamison*, No. 26cv2278, 2026 WL 1257329, at *2 (E.D. Pa. May 7, 2026) (discussing how petitioner's arrest for multiple violent felonies was the basis for his detention under 8 U.S.C. § 1226(c)).

Government")[2] originally opposed this relief, representing to this Court that the Government is lawfully detaining Diallo because as of March 31, 2005, he had a Final Order of Removal, "and is therefore subject to detention under 8 U.S.C. § 1231(a)." (Doc. No. 8 at 2.) The Government went on to argue that "ICE detained Petitioner to effectuate his order of removal" because even though he has a withholding of removal (Doc. No. 1 at 16), "the Republic of Sierra Leone has accepted [Diallo] for third-country removal," and he is "***undisputedly*** subject to an administratively final order of removal" (Doc. No. 8 at 2, 4) (emphasis added). Diallo replied on July 28, 2026, reasserting he is improperly detained because he has a withholding of removal to Guinea, and the Government cannot deport him to a third-country without revoking that withholding. (*See* Doc. No. 9.)

The Court then asked the parties "to provide the Court with letter briefs addressing how the Court should consider the March 31, 2005 order of Immigration Judge Annette S. Elstein (Doc. No. 1 at 16) and whether or how such an order is distinguishable from the situation addressed in *Matter of I-S- & C-S-*, 24 I. & N. Dec. 432 (BIA 2008)." (Doc. No. 10.) Both parties did so, and each reemphasized their prior positions (*see* Doc. Nos. 11, 12), but the Government also recognized there was a "factual dispute [] at issue in this case"—namely, whether Judge Elstein ever entered a final order of removal—and they requested twenty-one days to obtain a copy of Judge Elstein's March 31, 2005 oral decision (Doc. No. 12 at 2). The Court granted the Government's request. (Doc. No. 14.) Twenty days later, the Government filed a Supplemental Brief conceding Diallo has no Final Order of Removal, so he cannot be detained under 8 U.S.C. § 1231(a), but arguing—for the first time—that Diallo should remain

[2] Diallo names five government officials and one government agency as Respondents: (1) JL Jamison, Warden of the FDC; (2) Brian McShane, Acting Philadelphia Field Office Director for Enforcement and Removal Operations, ICE; David Venturella, Acting Director of ICE; (4) Markwayne Mullin, Secretary of DHS; (5) Todd Blanche, U.S. Attorney General; and (6) DHS. (Doc. No. 1 at 1.)

detained pursuant to 8 U.S.C. 1226(a). (Doc. No. 14.) Diallo has replied, arguing that the Government's fluctuating statutory arguments should weigh in favor of granting the Petition. (Doc. No. 15.) As the Petition is fully briefed, it is ripe for resolution.

## III. LEGAL STANDARD

Diallo seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Under that provision, a federal district court is authorized to grant a writ of habeas corpus to a petitioner who is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). A petitioner carries the burden of showing his detention violates the Constitution or federal law. *Id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## IV. DISCUSSION

Diallo is correct that during the pendency of this action, the Government has provided the Court shifting explanations for the basis of Diallo's detention. First, it was 8 U.S.C. § 1231(a), and now it is 8 U.S.C. § 1226(a). (*See* Doc. Nos. 8, 14.) So, even though the Government has now conceded that Diallo "is not *presently* detainable under 8 U.S.C. § 1231(a)" (Doc. No. 14 at 1), the Court will first explain why that is the case, before discussing why he is improperly detained under Section 1226(a) and why his present detention violates the due process of law.

### A. 8 U.S.C. 1231(a) Is Inapplicable Because Diallo Was Never Ordered Removed

8 U.S.C. § 1231(a) provides for mandatory detention of noncitizens who have been ordered removed. *See* 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days. . . ."). "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order

of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)).

Here, there is no evidence in the record before this Court that Diallo was ever ordered removed; so, Section 1231 does not apply to him. Exhibit A to the Petition is the March 31, 2005 order from Immigration Judge Annette Elstein in *Matter of Diallo, Alpha Ousmane*. (Doc. No. 1 at 16.) The order is a "summary of the oral decision" by Judge Elstein, and it contains checkboxes through which various outcomes can be conveyed. (*Id.*) The order contains handwritten markings conveying that Diallo's application for asylum was denied, and his application for withholding of removal was granted.[3] (*Id.*) But the portion that states "[t]he respondents was ordered removed from the United States" contains no markings of any kind. (*Id.*) And the Government has "reviewed Petitioner's administrative file, the audio recordings and transcript from the March 31, 2005 immigration court hearing, and the accompanying oral decision of Immigration Judge Annette S. Elstein" and concluded that Diallo "lacks a discrete final order of removal to support detention under § 1231(a)." (Doc. No. 14 at 1.)

The Court agrees with the Government's concession. Even though, "as a matter of logic, a finding of removal must precede a withholding of removal," *Ali v. Beers*, 988 F. Supp. 2d 89, 93 (D. Mass. 2013), the Bureau of Immigration Appeals ("BIA"), the administrative appellate court of U.S. Immigration Courts, refused to find that the withholding itself is evidence of a formal order of removal in *Matter of I-S- & C-S-*, 24 I. & N. Dec. 432 (BIA 2008). *I-S- & C-S* involved the exact factual scenario presently before the Court. There, an Immigration Judge

[3] A noncitizen "is entitled to withholding of removal if he or she can . . . demonstrat[e] that it is more likely than not that life or freedom would be threatened because of a protected ground if he or she were removed." *Li v. Att'y Gen. of U.S.*, 400 F.3d 157, 162 (3d Cir. 2005) (citing 8 U.S.C. § 1231(b)(3)(A) (1999)).

found two respondents removable, "pretermitted their applications for asylum as untimely filed," granted withholding of removal, but did not include an "explicit order of removal." *Id.* The BIA remanded the action back to the Immigration Judge, finding that "[a]lthough entering an order of removal prior to granting withholding may appear to be a technicality, it is not an insignificant one . . . [because] requiring a removal order prior to a grant of withholding is consistent with the regulatory scheme governing decisions rendered by Immigration Judges." *Id.* at 433. As such, DHS was ruled to be "unable to remove [petitioners] to another country" because their immigration proceedings were "unresolved and incomplete." *Id.* at 434. While BIA decisions are not binding on this Court, *see, e.g.*, *Hussain v. O'Neill*, No. 26cv35, 2026 WL 66891, at *2 (E.D. Pa. Jan. 8, 2026), we would find *I-S- & C-S-* persuasive in the factual scenario here, irregardless of whether the Government conceded this issue.

**B. <u>Diallo's Current Detention Violates Due Process</u>**

"Freedom from imprisonment—from government custody, detention, or other forms of government restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Having now conceded their original basis for detention, the Government attempts to fall back on 8 U.S.C. § 1226(a) (*compare* Doc. No. 8, *with* Doc. No. 14), which governs the apprehension and detention of noncitizens in the United States. *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien ***may*** be arrested and detained pending a decision on whether the alien is to be removed from the United States.") (emphasis added). The Government's *post hoc* argument is not convincing.

Specifically, the Government argues that Diallo *now* has an administrative process available to him, in that he can request a bond hearing related to his detention, so his Petition should be dismissed for failure to exhaust his administrative remedies. (Doc. No. 14 at 4.) After

the Government realized the fatal error in Judge Elstein's March 31, 2005 order, they claim to have served Diallo "with a Form I-286, Notice of Custody Determination" and because Diallo requested review of that decision, this will "trigger the scheduling of a bond hearing." (*Id.* at 3.)

This argument fails for two reasons. ***First***, Diallo is not required to exhaust his administration remedies because exhaustion is futile and currently impossible. *See Lyons v. U.S. Marshals*, 840 F.3d 202, 205 (3d Cir. 1988). On September 5, 2025, the BIA issued a precedential decision holding that an immigration judge has no authority to consider a bond request from any individual who entered the United States without admission. *See In re Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). Because immigration judges are bound by the BIA's holding in *Yajure Hurtado*—and therefore, *must* deny requests for bond hearings from detainees like Diallo—it will be futile for Diallo to request a bond hearing before an immigration judge and appeal the inevitable denial to the BIA before seeking review in federal court. And the Government's Supplemental Brief makes clear that Diallo cannot currently attend any such bond hearing while he remains detained at the FDC. (*See* Doc. No. 14 at 3 n.1 ("[T]he FDC (run by the BOP) does not facilitate bond hearings in any capacity on behalf of ICE detainees . . . .").) "A remedy that exists only if ICE elects to make it accessible is not an available remedy Petitioner must exhaust." *Dos Reis v. McShane*, No. 26cv3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)).

***Second***, and more fundamentally, the bond hearings provided by Section 1226(a) do not retroactively cure the initially unlawful detention of Diallo. *See Dos Reis*, 2026 WL 1746649, at *3 ("A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to

conduct an individualized assessment before detention); *Gopie v. Lyons*, No. 25cv5229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) (finding "a bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance").[4] Diallo was arrested and detained on July 13, 2026 (Doc. No. 1 ¶ 22); the Government only served Diallo with the Notice of Custody Determination which prompted the potential bond hearing on August 25, 2026, after he had been detained for more than a six weeks (*see* Doc. No. 14-2). In other words, Diallo was detained for six weeks on grounds that were demonstrably untrue and during that entire time he was not provided the opportunity to request a bond hearing.

In light of the above, the Court finds that Diallo's detention violates due process of law. As this Court has held in hundreds[5] of recent cases relating to the Government's interpretation of a related INA Section, 8 U.S.C. § 1225(b)(2), "[w]hen the Government detains an alien under Section 1226, the alien has due process rights, including a right to an individualized detention and a bond hearing." *Kashranov v. Jamison*, No. 25cv5555, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025); *see also Dos Reis*, 2026 WL 1746649, at *3 ("The initial custody determination requires an individualized determination as to whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding.") (cleaned up).

[4] And the cases the Government cites to the contrary (*see* Doc. No. 14 at 4) are factually inapposite as they all relate to noncitizens who were arrested and detained after not complying with the terms of their visas. *See, e.g.*, *Ubaid v. Jamison*, No. 26cv2681, 2026 WL 1346670, at *1 (E.D. Pa. May 14, 2026); *Torres-Duran v. Blanche*, No. CV 26cv3586, 2026 WL 1878605, at *1 (E.D. Pa. June 30, 2026).

[5] *See* Kyle Cheney and Jessie Blaeser, *Explore the data: More than 18,100 rulings against Trump in ICE cases*, POLITICO, https://www.politico.com/news/2026/05/13/mandatory-detention-ice-cases-rulings-database-00913988 (last accessed August 28, 2026) (collecting recent opinions and orders relating to noncitizen Section 2241 habeas petitions).

Due process challenges to government agency actions are generally considered under the framework adopted in *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976). *See also Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331–32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context). Under *Mathews*, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Here, the first and second factors strongly favor Diallo. He has been physically confined in civil immigration detention for more than a month and a half, and is the textbook example of an erroneous deprivation because the initial basis the Government gave for his detention, a final order of removal under Section 1231, turned out to be untrue. (*See* Doc. No. 14.) And even recognizing the Government's interest in immigration enforcement, "and specifically in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community,'" this interest does not outweigh the first two factors on the facts of this case. *Dzehtisarou v. Mullin*, No. 26cv5060, 2026 WL 2211392, at *6 (E.D. Pa. July 31, 2026) (quoting *Zadvydas*, 553 U.S. at 690) (cleaned up); *see Dos Reis*, 2026 WL 1746649, at *5 (finding the same and granting habeas relief). So, the Court finds that Diallo's current detention violates due process and he must be immediately released.[6]

## V. CONCLUSION

In sum, the Court will not turn a blind eye to the Government's failure to properly order Diallo removed merely because it happened 21 years ago. Nor will we countenance their attempt

[6] Because the Court finds Diallo succeeds on his due process claim, we do not reach his APA or his ultra vires claims.

to retrofit the basis for Diallo's detention. Because ICE's arrest and DHS's detention of Petitioner is unconstitutional and unlawful, the Petition will be granted.

An appropriate order follows.